NOT FOR PUBLICATION                                            (Docket No. 34)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

```
_____
                               :
DEVELOPERS SURETY & INDEMNITY, :
Co.,                           :
                               :
            Plaintiff,         :    Civil No. 06-0086 (RBK)
       v.                      :    OPINION
                               :
NDK GENERAL CONTRACTORS, INC., :
et al.,                        :
                               :
            Defendants.        :
_____:
```

**KUGLER**, United States District Judge:

This matter comes before the Court on motion by Plaintiff Developers Surety & Indemnity, Co. ("Plaintiff") for default judgment of its claims against Defendants NDK General Contractors, Inc., Nicole Kemenash, Paul Paez, Kathleen Crescenzi, Joseph Crescenzi, Davina Levari, and Kenneth Levari, III ("Defendants"), for failure to appear or otherwise respond to Plaintiff's Amended Complaint of January 19, 2006.

For the reasons set forth below, the Court will grant Plaintiff's motion.

## I. Background

Plaintiff alleges that on or about October 25, 2004, Defendants signed an Indemnity Agreement ("Agreement") in favor of Plaintiff to induce Plaintiff to issue performance and payment

bonds for construction projects on behalf of Defendant NDK.

Under the terms of the Agreement, Defendants agree to indemnify and hold Plaintiff harmless from all liability under bonds issued by Plaintiff. Also under the terms of the Agreement, Defendants gave Plaintiff sole discretion to review and pay claims on bonds Plaintiff issued.  The Agreement also provides that Defendants will post collateral when demanded by Plaintiff equal to any reserve account set up by Plaintiff to cover any loss, contingent or otherwise.

After Plaintiff and Defendants executed the Agreement, Defendant NDK entered into a contract with the Commonwealth of Pennsylvania Department of General Services to perform work at the Embreeville State Hospital ("Project").  Defendant NDK requested that Plaintiff issue a Contract Bond in the amount of $3,189,000.00 to guarantee Defendant NDK's performance obligations under its contract with the Pennsylvania Department of General Services and to ensure Defendant NDK's payment obligations to its subcontractors, suppliers, and materialmen.

The Pennsylvania Department of General Services terminated Defendant NDK on October 3, 2005, and demanded that Plaintiff complete the Project.  In addition, NDK subcontractors and suppliers made claims on Plaintiff as a result of Defendant NDK's alleged failure to pay for labor and materials Defendant NDK received on the Project.

Plaintiff alleges that it paid $798,634.07 to complete the Project. Plaintiff further alleges that it paid $177,415.61 to Defendant NDK's suppliers and subcontractors for labor and materials Defendant NDK used on the Project. Developers also incurred attorney's fees and other costs in connection with the Contract Bond.

Plaintiff states that in December 2005, it set reserves in the amount of $650,000 to cover losses in connection with the Contract Bond. Accordingly, Plaintiff demanded that Defendants deposit collateral to cover the anticipated losses. Plaintiff also asked that Defendants indemnify it for losses, costs, and expenses Plaintiff incurred in connection with the Contract Bond. Defendants did not deposit collateral, nor did Defendants indemnify Plaintiff.

Plaintiff filed a Complaint in the United States District Court for the District of New Jersey on January 9, 2006. Plaintiff sought an injunction to compel Defendants to deposit collateral of $650,000. Plaintiff also sought to recover losses, costs and fees resulting from Defendant NDK's failure to complete the Project.

On January 12, 2006, Plaintiff filed a motion for a preliminary injunction, and on January 19, 2006, Plaintiff filed an Amended Complaint. Defendants, represented by former counsel, subsequently agreed to deposit collateral of $650,000 with

Plaintiff, and this Court entered a Consent Order to that effect on January 30, 2006.  Defendants allege that over the next several months, the parties discussed drafts of a proposed settlement agreement.

This Court denied as moot Plaintiff's motion for a preliminary injunction on July 17, 2006.

In July 2006, Defendants retained new counsel, and on August 3, 2006, Defendants notified the Court of the substitution of counsel.  Defendants further allege that they notified Plaintiff of the change of counsel on July 31, 2006.

Plaintiff alleges that despite the Consent Order, Defendants failed to deposit the collateral.  As a result, Plaintiff filed a Motion to Compel Compliance with the Consent Order on June 23, 2006.

The docket for this case reflects that Defendants never answered Plaintiff's Amended Complaint.  On August 4, 2006, Plaintiff requested that the clerk enter default against all Defendants.  Also on August 4, 2006, former counsel for the Defendants submitted a letter to the Court, asking that the clerk not enter default during the period of transition to new counsel.  Regardless, the clerk entered default on August 4, 2006. On August 11, 2006, Plaintiff moved for default judgment.  On September 15, 2006, Defendants moved to set aside the clerk's entry of default. The Court denied both motions on February 15,

2007. On March 19, 2007, Plaintiff renewed its motion for default judgment as to all Defendants. Defendants do not oppose this motion.

**II. Standard**

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit emphasized that such "discretion is not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Directv, Inc. v. Asher, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and

Procedure § 2688, at 58-59, 63 (3d ed. 1998)).

### III. Analysis

Before entering a default judgment, the Court must consider three factors: (1) whether plaintiff will be prejudiced if default is not granted, (2) whether defendant has a meritorious defense, and (3) whether defendant's delay was the result of culpable misconduct. Carpenters Health & Welfare Fund v. Naglak Design, 1995 WL 20848, *2 (E.D. Pa. 1995) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987)).

    A.   Meritorious Defense

The Third Circuit stated that "the threshold question in th[ese] cases is whether [the defendant] . . . established a meritorious defense." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). A defendant establishes a "meritorious defense when [defendant's] allegations, if established at trial, would constitute a complete defense." Id. A complete defense must "allege[] specific facts beyond simple denials or conclusionary statements." Id.

Plaintiff argues that the terms of the Agreement indemnify Plaintiffs for all costs, losses and attorney's fees incurred by Defendants in connection with the Contract Bond, and that the Agreement gives Defendants "sole and absolute discretion" to determine whether Plaintiff should pay, compromise, or defend any bonds.

6

In a previous Opinion, in which the Court denied Defendants' motion to set aside the entry of default, the Court found that Defendants do not have a meritorious defense. See <u>Developers Sur. & Indem., Co. v. NDK General Contractors, Inc.</u>, No. 06-0086, 2007 WL 542381, at *3 (D.N.J. Feb. 15, 2007). At that time, the Court found that Plaintiff and Defendants bargained for the terms of the Agreement, and that the terms are clear.  The Court stated

> Paragraph 5.3(iii) of the Agreement states that, if the work at issue relates to the development of real property or construction of improvements upon real property, the Agreement defines "default" as "the . . . involuntary cessation or suspension of work required to be performed by [the] Principal in connection with the Obligation." Further, in the event of default in a project involving the development of real property or construction of improvements upon real property, Paragraph 6.3(i) of the Agreement gives Plaintiff "sole and absolute discretion" to, among other things, "at the expense of the Principal and Indemnitor, to complete the performance required . . . or to cause the same to be completed or to consent to the completion thereof, and to take any other action which [Plaintiff] may deem appropriate in connection therewith."  Therefore, the terms of Agreement clearly permitted Plaintiff's course of action once the Commonwealth of Pennsylvania terminated Defendants.

<u>Id</u>.

Because the Court finds that Defendants failed to adduce sufficient evidence to constitute a meritorious defense to Plaintiff's claims, the Court moves to the second prong of the inquiry.

### B.   Prejudice to the Plaintiff

The second factor in the Court's analysis is whether Plaintiff will suffer prejudice if the Court does not enter a

7

default judgment. As discussed in Section III.A., supra, the Court finds that Defendants do not have a meritorious defense in this action. Therefore, requiring Plaintiff to litigate this case would result in Plaintiff incurring unnecessary costs. Because the Court finds that not entering a default judgment would prejudice Plaintiff, the Court moves to the third and final prong of the analysis.

### C.   Culpable Misconduct

The third factor in the Court's analysis is whether Defendants' failure to respond resulted from Defendants' culpable misconduct. Although Defendants do not oppose the current motion for default judgment, the Court notes that in previous submissions and correspondence with the Court, it appears that Defendants' failure to formally answer was due to ongoing settlement discussions and substitution of counsel. Therefore, the Court is hesitant to deem Defendants' failure to answer as "culpable misconduct."

### D.   Conclusion

Even though the Court finds that Defendants' actions were not the result of culpable misconduct, the Court is persuaded that a default judgment is appropriate in this case because Defendants do not have a meritorious defense, and because a failure to enter a default judgment would result in prejudice to Plaintiff. Therefore, the Court will grant Plaintiff's motion

for a default judgment.

**IV.   Damages**

Plaintiff submits an affidavit in which Plaintiff states that it paid $798,634.07 to complete the Project.  Plaintiff further states that it paid $177,415.61 to Defendant NDK's suppliers and subcontractors for labor and materials Defendant NDK used on the Project.  Plaintiff also incurred attorney's fees and other costs in connection with the Contract Bond totaling $37,879.64. Finally, Plaintiff paid $65,437.50 to a consultant to oversee completion of the project. Plaintiff's costs incurred to date total $1,079,366.82. (Pl.'s Br. Supp. Default J. Ex. B.)

The Court will enter default judgment against Defendants in the amount of $1,079,366.82.

**V.   Conclusion**

For the foregoing reasons, the Court will grant Plaintiff's motion for default judgment in the amount of $1,079,366.82 against Defendants.

Dated: <u>5/15/2007</u>              <u>  s/Robert B. Kugler  </u>
                                      ROBERT B. KUGLER
                                      United States District Judge